**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DISTRICT**

| | | |
|---|---|---|
| JOHN STELLIOS DAVIS, | ) | |
| | ) | |
| Defendant/Movant, | ) | |
| | ) | |
| v. | ) | Case No. 2:09-cv-8011-RDP-JEO |
| | ) | 2:06-cr-0057-RDP-JEO |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Respondent. | ) | |

<u>**REPORT AND RECOMMENDATION**</u>

This matter is before the court on the motion of John Stellios Davis (hereinafter "the defendant" or "Davis") to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 and the amendment thereto.  (Doc. 1 & 3).[1]  Also before the court are his requests for an evidentiary hearing (doc. 3 & 16) and his motions for discovery (doc. 26), to supplement the record (doc. 28), and for the appointment of counsel (doc. 29).  Upon consideration, the court finds that the requests for an evidentiary hearing and the motions for discovery, the appointment of counsel and to vacate the conviction and sentence are due to be denied.  His motion to supplement the record is due to be granted.

I.      **BACKGROUND**

A.      **Procedural History**

On February 3, 2006, Davis was charged by the grand jury for the United States District Court for the Northern District of Alabama in a single-count indictment with having "knowingly transported and shipped in interstate commerce, by computer, child pornography," in violation of

---

[1] References herein to "Doc. ___" are to the document numbers assigned by the Clerk of the Court.

18 U.S.C. § 2252A(a)(1).  (Doc. 10-1 (Attachment A)).[2]  Counsel was appointed to represent the defendant and he filed various motions on behalf of the defendant, including motions (1) for disclosure of uncharged conduct pursuant to FEDERAL RULE OF EVIDENCE 404(B), (2) to appoint a forensic computer expert, (3) for disclosure of computer programs used in the recovery of computer evidence, and (4) for the government agents to retain their rough notes.  (Doc. 10-2 to 5 (Attachments B-E)).

On October 11, 2006, the defendant executed a "Guilty Plea Advice of Rights Certification."  (Doc. 10-6 (Attachment F)).  He entered a guilty plea to the charge on October 27, 2006.  (Doc. 10-7 (Attachment G)).  An extensive presentence investigation was done and a detailed report was presented to the court, counsel, and the defendant prior to sentencing.  (Doc. 10-8 (Attachment H)).  Defense counsel filed a number of objections to the findings of the United States Probation Officer who prepared the report.  (Doc. 10-9 (Attachment I)).  Counsel also filed a memorandum in support of the court's sentencing at a level that would be "'sufficient, but not greater than necessary,' to comply with the four purposes of sentencing set forth in Section 3553(a)(2) – retribution, deterrence, incapacitation, and rehabilitation."  (Doc. 10-10 (Attachment J at 1).  The defendant was sentenced on March 15, 2007, to serve 235 months in custody.[3]  (Doc. 10-11 (Attachment K)).  Davis filed a notice of appeal on March 16, 2007.  (Doc. 10-12 (Attachment L)).

Counsel filed a motion for a new trial premised on "newly discovered evidence."  (06-

---

[2]References herein to "Attachment ___" are to the attachments to the response of the United States located at document 10.

[3]The statutory maximum was 240 moths.  18 U.S.C. § 2252A(b)(1).

0057 Doc. 32).[4]   The motion was set for a hearing.  (*Id*. at Doc. 38).  Counsel then filed a motion

to withdraw the earlier motion for a new trial.  (*Id*. at Doc. 40).  The court ordered counsel to

prepare a declaration for the defendant's signature wherein he affirmed his intention to withdraw

the motion for a new trial.  (*Id*. at Doc. 41).  Davis then filed a motion informing the court that

his family had hired new counsel to represent him and that he wanted to withdraw his motion for

a new trial.  (*Id*. at Doc. 42).  The court set the matter for a telephone conference call with the

defendant participating.  (*Id*. at Doc. 43).  Counsel for the defendant (P. Russell Steen) filed a

motion to withdraw from further representation of the defendant.  (*Id*. at Doc. 45).  The motion

was granted.  New counsel, Thomas R. Wolsoncroft, represented the defendant on appeal.[5]  (See

Doc. 47).

The defendant's conviction and sentence were affirmed by the Eleventh Circuit Court of

Appeals on February 6, 2008.  (*Id*. at Doc. 52; Doc. 10-14 (Attachment N)).  He filed the present

motion to vacate on April 2, 2009.  He asserts the following grounds for relief:

1.   He was denied due process because his plea was not knowingly and
     intentionally entered with knowledge of the consequences in the following
     ways:

     a.   Counsel misrepresented that the defendant's computer hard drive
          had been examined;
     b.   Counsel discouraged him from seeking an alibi for the date
          of the offense;
     c.   Counsel miscalculated the Sentencing Guidelines; and,
     d.   Counsel did not object to all of the enhancements the
          defendant wanted him to object to.

---

[4]References herein to "06-0057 Doc. ___" are to the document numbers assigned by the Clerk of the Court
in the defendant's original criminal case (*United States v. John Stellios Davis*, 2:06-cr-00057-RDP-JEO).

[5]The record also demonstrates that defense counsel Glennon F. Threatt also made a limited appearance under the CJA
concerning the post-sentencing motion for a new trial.  (Doc. 46 and Docket Entry dated July 19, 2007).

3

(Ground One).

2.  He was denied due process due to the fact that the court imposed a sentence premised on incorrect facts concerning the number of images involved in the offense.  (Ground Two).

3.  The court lacked jurisdiction due to the fact that there was no evidence of the transmission of prohibited images in interstate commerce.  (Ground Three).

4.  Trial counsel rendered ineffective assistance in the following ways:

    a.  Improperly advising him of the law, particularly as to the basis for specific sentence enhancements;
    b.  Discouraging him from seeking an alibi for the date of the offense;
    c.  Failing to conduct a reasonable investigation; and,
    d.  Not having the computer examined by a forensic examiner.

    (Ground Four).

5.  Appellate counsel rendered ineffective assistance by:

    a.  Failing to meet or consult with Davis in the filing of his direct appeal and
    b.  Failing to contest the trial court's application of specific sentencing enhancements.

    (Ground Five).

6.  This court violated his due process rights in that it lacked jurisdiction because the factual basis for the plea failed to show that any images were sent in interstate commerce by the defendant.

    (Ground Six).

(Doc. 1).  In his amendment to the motion to vacate, the defendant asserts that his responses to the court acknowledging his guilt and satisfaction with counsel during the plea colloquy were induced by the false representations of counsel.  (Doc.3).  The United States was required to appear and show cause why the requested relief should not be granted.  The United States filed a lengthy response supported by various attachments.  (Doc. 10).  The defendant then filed a reply

to the response of the United States.  (Doc. 16).  He subsequently filed the various motions

referenced in the introduction in support of his motion to vacate.

> **B.      Offense Conduct**

According to the proffer of the Assistant United States Attorney, the trial evidence in this

case would have shown the following:

> [O]n or about August the 1st, 2005, the defendant John Stellios Davis sent
> at least four images of child pornography, as that term is defined under Section
> 2256 of Title 18.  He sent those images by computer via the Internet from his
> residence in Asheville, North Carolina to an undercover officer who was located
> in Birmingham, Alabama which is in Jefferson County within the Northern
> district of Alabama.

(Doc. 10-7 at 15-16 (Attachment G)).

## II.      DISCUSSION

> **A.      Lack of Jurisdiction Claims**

Because the defendant contests this court's jurisdiction over him, that claim will be

addressed first.  Specifically, he asserts that there was no evidence that he sent any prohibited

images in interstate commerce because he merely "sent electronic codes which consisted of

digital codes through his computer."  (Doc. 1 at Ground Three).  In a concomitant claim, he

asserts that there was an inadequate factual basis concerning the alleged transmission of such

images for purposes of the plea.  (*Id*. at Ground Six).  Due to the relatedness of the claims, they

will be addressed together.

The United States responds that this court has jurisdiction over the defendant because he

was indicted for a violation of 18 U.S.C. § 2252A(a)(1).  It further asserts that the defendant's

challenge is in essence "an attack against the sufficiency of the evidence necessary to sustain a

conviction...." (Doc. 10 at 6).  Accordingly, counsel for the United States asserts that his "claim

should have been raised, if at all, on direct appeal."  (*Id*. (citing *Mills v. United States*, 36 F.3d

1052, 1055 (11th Cir. 1994)).

        The defendant retorts that his challenge has "nothing to do with the power of Congress

under the Constitution's interstate commerce clause to criminalize the receipt, distribution, or

possession of pornography," but asserts that "there was no evidence where the webb facilities

utilized by [him] were located."  (Doc. 16 at 1 & 3).  He further states that he "did not transmit

any 'images' in interstate commerce, and, further, it is clear that the Government offered no

credible evidence of the fact that [he] had transmitted 'images' in interstate commerce" and "[a]s

a consequence, ... did not prove the interstate element of its case."  (*Id*. at 8).  In support of his

argument, the defendant cites *United States v. Schaefer*, 501 F.3d 1197 (10th Cir. 2007).  In

*Schaefer*, the court held that under 18 U.S.C. § 2252A, "it is not enough to assume that an

Internet communication necessarily traveled across state lines in interstate commerce." *Id*., 501

F.3d at 1200-01.

        This court finds that these claims, which, as noted by the United States, challenge the

evidence and not the jurisdiction of the court, should have been raised on direct appeal.  The

applicable principles were enunciated in *Mills*:

            Generally speaking, an available challenge to a criminal conviction or
        sentence must be advanced on direct appeal or else it will be considered
        procedurally barred in a § 2255 proceeding.  *See Greene v. United States*, 880
        F.2d 1299, 1305 (11th Cir.1989) (and the cases cited therein), *cert. denied*, 494
        U.S. 1018, 110 S. Ct. 1322, 108 L. Ed. 2d 498 (1990).  A ground of error is
        usually "available" on direct appeal when its merits can be reviewed without
        further factual development....  When a defendant fails to pursue an available
        claim on direct appeal, it will not be considered in a motion for § 2255 relief
        unless he can establish cause for the default and actual prejudice resulting from

6

>the alleged error.  *Cross v. United States*, 893 F.2d 1287, 1289 (11th Cir.), *cert. denied*, 498 U.S. 849, 111 S. Ct. 138, 112 L. Ed. 2d 105 (1990).  Alternatively, under the fundamental miscarriage of justice exception, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."  *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 2649, 91 L. Ed. 2d 397, 413 (1986).

*Mills*, 36 F.3d at 1055-56.  These claims could have been, and should have been raised on direct appeal.  Thus, they are barred from review absent a showing of cause and prejudice or a fundamental miscarriage of justice.  The defendant has made neither showing.

Concerning the first exception, cause and prejudice, the defendant has made no showing that there were no transmissions in this case from Asheville, North Carolina to Birmingham, Alabama or that the proffer of the Assistant United States Attorney was in error.  Accordingly, he has not demonstrated that either his trial or appellate counsel should have or could have raised these issues.  Additionally, he has not demonstrated any prejudice.[6]  His conclusory arguments are not sufficient.  Concerning the second exception, the fundamental miscarriage of justice exception, there is absolutely no evidence before the court demonstrating that he is actually innocent of the charged offense.[7]

The court also notes that the defendant's reliance on *Schaefer* is misplaced for a number of reasons.  First, it is not binding on this court.  Second, and most significant, Congress responded to *Schaefer* by amending § 2252A to make it clear that the assumption that an Internet

---

[6]To establish prejudice under this standard, the defendant must show that the purported error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *United States v. Frady*, 456 U.S. 152, 170, 102 S. Ct. 1584, 1596 (1982) (emphasis in original).

[7]"To establish actual innocence, [the defendant] must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."  *Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 1611 (1998) (internal quotations marks and citations omitted).

7

communication traveled in interstate commerce governs in future cases.  *See United States v. Swenson*, 335 Fed. Appx. 751, 753 (10th Cir. 2009).  Third, in *Schaefer*, unlike the present case, the defendant was convicted after a bench trial on the merits.  Fourth, the defendant has not met his burden of proof warranting relief in the absence of any evidence in support of his claim.

**B.      Knowing and Intentional Nature of the Plea**

The defendant next asserts that he was denied due process because his plea was not knowingly and intentionally entered with knowledge of the consequences.  In support of this challenge, he alleges that counsel misrepresented that his computer hard drive had been examined, that counsel discouraged him from seeking an alibi for the date of the offense, counsel miscalculated the Sentencing Guidelines, and counsel did not object to all of the enhancements. (Doc. 1 at Ground One).

FEDERAL RULE OF CRIMINAL PROCEDURE 11 requires that the court ensure that the defendant understands the charges and the consequences of his plea and that he has not been coerced.  *United States v. Evans*, 478 F.3d 1332, 1339 (11th Cir. 2007).  In *Henderson v. Morgan*, 426 U.S. 637, 96 S. Ct. 2253 (1976), the Supreme Court stated that "a plea cannot support a judgment of guilt unless it was voluntary in a constitutional sense.[ ] And clearly the plea could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process."  *Id*. at 644-45 (footnote omitted) (citing *Smith v. O'Gady*, 312 U.S. 329, 334, 61 S. Ct. 572, 574 (1941)).  The Court further noted:

A plea may be involuntary either because the accused does not understand

8

the nature of the constitutional protections that he is waiving, *see, E. g., Johnson v. Zerbst*, 304 U.S. 458, 464-465, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461, or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense. *Smith v. O'Grady*, 312 U.S. 329, 61 S. Ct. 572, 85 L. Ed. 859.

*Henderson*, 426 U.S. at 645 n.13. A plea must also be "'[a] knowing, intelligent [act] done with

sufficient awareness of the relevant circumstances and likely consequences.'" *United States v.*

*Deal*, 678 F.2d 1062, 1065 (11th Cir. 1982) (quoting *Brady v. United States*, 397 U.S. 742, 748

99 S. Ct. 1463 1469 (1970)). The Supreme Court has further stated:

[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Id.*, 678 F.2d at 1065 (quoting *Brady*, 397 U.S. at 755). "Thus, in the absence of physical harm,

mental coercion overbearing the will of the defendant, or intentional misrepresentation or

deception, the Court has not been very receptive to claims of coerced guilty pleas.[ ]" *Deal*, 678

F.2d at 1066 (footnote omitted).

Additionally, the Eleventh Circuit has also noted:

The trial judge is obligated under the rule to personally disclose only those consequences of a guilty plea specifically set forth in the rule. *United States v. Dayton*, 604 F.2d 931, 937 (5th Cir. 1979) (en banc) (consequences listed are "inclusive and exclusive"), *cert. denied*, 445 U.S. 904, 100 S. Ct. 1080, 63 L. Ed. 2d 320 (1980).... Although the rule requires the court to divulge the "mandatory minimum penalty" and the "maximum possible penalty," FED. R. CRIM. P. 11(c)(1), we do not read these phrases as encompassing possible deportation or exclusion. The Advisory Committee Notes to the rule state that the "objective is to insure that a defendant knows what minimum sentence the judge must impose and what maximum sentence the judge may impose." Notes of the Advisory

> Committee on Rule 11, 1974 Amendment (emphasis added); *see also Michel v.*
> *United States*, 507 F.2d 461, 466 (2d Cir. 1974) (the judge must assure "only that
> the punishment that he is meting out is understood") (emphasis in original).

*Downs-Morgan v. United States*, 765 F.2d 1534, 1537-38 (11th Cir. 1985).

### 1.    Computer Hard drive

The defendant first asserts that counsel told him that he had the defendant's computer hard drive examined by a computer forensic technician and that the copy of the conversation between the defendant and the undercover officer that the defendant saw was a product of that examination.  (Doc. 1 at 5 of 34).  The defendant then concludes that "counsel's assurance that this chat conversation was a product of a forensic examination ... was one of the main deciding factors, if not the main deciding factor, in his determination to plead guilty."  (*Id*. at 6 of 34 (underline in original)).  The response of the United States includes an affidavit of trial counsel. Therein, he states that he did not require a detailed diagnostic forensic evaluation of the computer because the defendant did not challenge the transcripts of the conversation prior to or at the plea hearing.  (Doc. 10-15 (Attachment O) at 4 of 9).  It was only after the defendant was sentenced, that he "made several statements concerning the conversation" that led to the transmittal of the images.  (*Id*. at 5 of 9).

The court does not see how the failure of counsel to have the hard drive of the defendant's computer examined improperly contributed to the defendant's decision to plead guilty.  Nothing in the record suggests, much less supports, a contention that the defendant did not send the communication to the undercover officer.  The defendant had every opportunity to raise this issue before and during the plea, but failed to do so.  His dilatory and conclusory allegation now that the fact that "the chat conversation he was shown was a product of a forensic

10

examination of his computer hard drive was one of the main deciding factors, if not <u>the</u> main

deciding factor, in his determination to plead guilty" is not sufficient.  (Doc. 1 at 6 of 34).  He is

not entitled to any relief on this basis at this late juncture.  Nothing before the court, including the

defendant's representations, demonstrates that the call did not originate with the defendant in

Asheville, North Carolina.

### 2.    Alibi Defense

The defendant next challenges his plea on the basis that his counsel discouraged him from

pursuing an alibi defense for the afternoon of August 1, 2005, the offense date.  (Doc. 1 at 6 of

34).  In support of this contention, he asserts that if counsel had properly investigated the matter

and informed the defendant of the facts, including the failure to have the hard drive forensically

examined, the defendant would have produced information and records showing that he was in

his doctor's office at the time the crime purportedly occurred.  (*Id*. at 7 of 34).  Had this inquiry

occurred, the defendant asserts that he would not have pled guilty.  The United States responds

that it need not prove the exact time of the violation and the defendant cannot demonstrate any

prejudice.  (Doc. 10 at 18 of 23).

In *United States v. Reed*, 887 F.2d 1398 (11th Cir. 1989), the court stated:

> When the government charges that an offense occurred "on or about" a
> certain date, the defendant is on notice that the charge is not limited to the specific
> date or dates set out in the indictment.  *United States v. Creamer*, 721 F.2d 342
> (11th Cir. 1983).  Proof of a date reasonably near the specified date is sufficient.
> *United States v. Champion*, 813 F.2d 1154 (11th Cir. 1987); *United States v.
> Grapp*, 653 F.2d 189, 195 (5th Cir. Unit A, 1981).  Ordinarily, a variance between
> the date alleged and the date proved will not trigger reversal as long as the date
> proved falls within the statute of limitations and before the return of the
> indictment.  *United States v. Harrell*, 737 F.2d 971, 981 (11th Cir. 1984), *cert.
> denied*, 469 U.S. 1164, 105 S. Ct. 923, 83 L. Ed. 2d 935 (1985).  The fact that an
> alibi defense is advanced does not render the time a material element of a criminal

offense.  *Creamer*, 721 F.2d at 343.

*Reed*, 887 F.2d at 1403.  Even assuming that counsel did discourage the defendant from seeking an alibi for August 1, 2005, the defendant has not proved that he suffered any prejudice from the failure to seek out and produce an alibi witness.

The defendant's submission in support of the § 2255 motion indicates that he was at the doctor's office from around 1:00 p.m. to approximately 1:20 p.m.  (Doc. 16).  His additional submission in support of the motion includes a copy of a communication with the undercover officer at 1:00 p.m.  (Doc. 28 at 4 of 6).  However, this conversation was made and recorded in Birmingham, Alabama on Central Standard Time and the defendant was in Asheville, North Carolina, which is on Eastern Standard Time.  Additionally, nothing else before the court indicates that the transmittal between the defendant and the undercover agent occurred at about 1:00 p.m. Eastern Standard Time.[8]  Most importantly, the defendant acknowledged at the plea hearing that he committed the acts that meet the elements of the offense, including that they occurred on or about August 1, 2005.  (Doc. 10-7 (Attachment G) at 16-17 of 21).  Still further, trial counsel notes in his affidavit that the defendant did not "question[] the occurrence date, and certainly never brought to counsel's attorney a possible alibi for the date and time in question." (Doc. 10-15 (Attachment O) at. 5 of 9).  The existence of the 1:00 p.m. medical record does not demonstrate that the defendant is innocent.  Under these circumstances, the court cannot find a reasonable probability that, but for the circumstances, he would not have pled guilty.  *See United States v. Williams*, 339 Fed. Appx. 981, 983 (11th Cir. 2009).  Accordingly, this claim is without

---

[8]To the contrary, the affidavit of trial counsel states that the relevant communication was at 11:04:22 on August 1, 2005.  (Doc. 10-15 (Attachment O) at 5 of 9).

merit.

### 3.    Miscalculation of the Sentencing Guidelines

The defendant next claims his plea was improperly accepted because his counsel never told him that he would be pleading guilty to the more serious offense of distribution of child pornography, rather than transportation.  The significance of that difference, according to the defendant, is that the offense of distribution includes an enhancement for "trading a thing of value."  (Doc. 1 at 7 of 34).  Specifically, he asserts that counsel erroneously advised him that the sentence would be based only on the four images that were transmitted on August 1, 2005, when in fact there was a five-point enhancement under U.S.S.G. § 2G2.2(b)(2) for distributing child pornography for the purpose or expectation of receiving something of value in exchange.  The United States asserts that he is entitled to no relief because he cannot show that he suffered any prejudice.

At the outset, the court must examine the defendant's plea of guilty hearing.  During that proceeding, the court discussed the issue of estimating a sentencing range and relying on the estimate of counsel.  Specifically, the colloquy provided:

> THE COURT:  Have you and your attorney talked about the sentencing guidelines and, although advisory, how they may apply to your case?
>
> THE DEFENDANT:  Yes, Your Honor.
>
> THE COURT:  Do you understand that in determining a sentence, the Court will consider those applicable sentencing guidelines, and although not bound to follow them, must take them into account in setting an Advisory Guideline range, and then determine what a reasonable sentence would be based upon the sentencing factors that Congress has directed that I consider and the court consider in determining a sentence.  Do you understand all that?
>
> THE DEFENDANT:  Yes, Your Honor.

13

> **THE COURT:  Do you understand that you cannot rely on any estimated sentence or sentence range given to you by anyone, including your attorney; and while your attorney is quite skilled in his craft, he will be the first one to tell you that he can't predict with any certainty what the sentence in this case might be?  Do you understand that?**
>
> **THE DEFENDANT: Yes, Your Honor**.
>
> **THE COURT: He can certainly give you good advice and some indication of what you're looking at, but a sentence that's higher than estimated or lower than estimated would not be a basis for you or the government to seek to set aside the guilty plea you are in the process of making.  Do you understand that?**
>
> **THE DEFENDANT: Yes, Your Honor.**

(Doc. 10-7 (Attachment G) at 13-14 of 21 (bold added)).  Additionally, in an affidavit provided by trial counsel in response to the defendant's 2255 motion, Mr. Steen explains that he specifically advised the defendant of the statutory punishment, the possible application of the Sentencing Guidelines, and that his advice was only speculative.  (Doc. 10-15 (Attachment O), at 2; 4-5).

As the defendant was advised by Mr. Steen and the court that he could not rely solely on his trial attorney's estimated Guidelines calculation, this claim is without merit and should be denied.  As noted above, he was informed by the court that a deviation from counsel's estimate would not be a basis for setting aside his guilty plea.  Still further, the defendant executed a "Guilty Plea Advice of Rights Certification" wherein he acknowledged the application of the Sentencing Guidelines, including that they involve the consideration of numerous and varied matters, that they are not determined until the post-plea, pre-sentence investigation and report are completed, and the sentence ultimately imposed may be different from either the estimate of counsel or any preliminary determination by a United States Probation Officer.  (Doc. 10-6

14

(Attachment F) at 6 of 9).

Under the foregoing circumstances, it is difficult to see how the defendant's plea was anything but knowingly and intelligently entered.  However, even assuming that counsel did erroneously represent the potential Sentencing Guideline range, the defendant never complained after being provided a copy of the presentence report, having an opportunity to object, and having been present at sentencing when he could have informed the court of these complaints.  The record shows that counsel objected to the inclusion "for value" enhancements under the Guidelines.  (Doc. 10-9 (Attachment I) at 2-3 of 4; Doc. 10-10 (Attachment J) at 12-17 of 36).  The matter was argued at sentencing and the court specifically rejected this challenge, finding that the conversation with the undercover officer demonstrated that the defendant expected to receive something of value from the communication.[9]  (Doc. 10-11 (Attachment K) at 3-9 of 30).

---

[9]The transcript of the communication between the defendant and the undercover officer provides:

THE COURT: ....  So the session begins with a "hi."  The undercover agent says "hello."  And the defendant asks, "you trading?"

....

MR. CARROLL: Then the undercover goes on to say, "nothing to really trade."

THE COURT: "You have nothing at all?"  "The undercover agent: Nothing, I feel comfortable sharing you."

MR CARROLL: And then the defendant says –

THE COURT: I have "yes; why don't you want to trade?"  "Might get caught."  "How do I know you're not a cop?"  That's what the agent says to the defendant.  The defendant says, "if I send first, will you send?"  All right.

....

[MR. CARROLL:] ...

But the defendant goes on.  The undercover says, "okay.  I still don't trust you.  You didn't send anything good.  Send something now."  And then the defendant's reply is "I did.  Now please send."

Accordingly, the court finds that the even accepting the defendant's allegations as true, he is entitled to no relief on his claim that counsel was ineffective.  Nothing in the defendant's § 2255 pleadings or the record indicates otherwise.

### 4.    Failure to Object to All of the Enhancements

Lastly, with regard to the plea, the defendant complains that counsel did not object to all of the enhancements that he (the defendant) told him to object to.  The first objection that counsel failed to raise concerns the four-point enhancement that was imposed due to the fact that the items sent to the undercover officer included sado-masochistic materials.  This challenge is completely without merit because it did not occur until after the plea was entered.  Additionally, the defendant does not support his contention with any details or evidence.  The record, however, reveals that the four images sent by the defendant met the definition under U.S.S.G. § 2G2.2(b)(4) in that they portrayed sado-masochistic conduct.  (Doc. 10-8 (Attachment H) at ¶¶ 7 & 18).[10]  Accordingly, the court finds that there is no merit to this contention.

The second part of this claim asserts that counsel failed to raise a proper objection to the five-point enhancement for considering the defendant's possession of two CD ROMs that allegedly contained child pornography.  (Doc. 1 (Ground Two) at 12 of 34).  Because this challenge is closely related to the second ground in his motion to vacate, concerning "incorrect

---

And so the defendant at that point sent the next ... images.  The four images that he's charged for were, in fact, images of child pornography.

(Doc. 10-11 at 5-7 of 30; Gov. Ex. 1 from the March 15, 2007 Sentencing Hearing (doc. 10-11); Doc. 28 at 4 of 6).

[10]Paragraph 7 of the presentence report contains a description of each photograph that the defendant sent.  It clearly depicts sado-masochistic conduct.

facts," they will be addressed together.  As a part of this part of his claim, the defendant initially

asserts that counsel did not personally examine the evidence on the CD ROMs and he failed to

argue that the United States did not established that he (the defendant) had access to the CDs on

the offense date of August 1, 2005.  In support of this contention, he cites *United States v.*

*Dunlap,* 279 F.3d 965 (11th Cir. 2002), where the Eleventh Circuit Court of Appeals remanded

to the trial court a distribution of child pornography sentence because the United States failed to

lay an evidentiary foundation for the application of the guideline that required the defendant

possess the sadistic materials used for the enhancement at the time he transmitted the child

pornography.  *Id*. at 967.

 In support of this contention, he asserts that the court "erred in concluding that the

offense involved 2,000 images, as [he] did not possess that number of illegal images."  (*Id*.)  He

further states that they were not "graphic image files, but were deleted images that did not offend

the law and [they] could not have been reconstituted as graphic images by any programs that [he]

possessed."  (*Id*.)  The United States responds that this claim was raised by the parties on direct

appeal, but the Eleventh Circuit Court of Appeals did not address the issue.  (Doc. 10 at 8).

Counsel for the United States further argues that there is no error in the court's findings on this

matter and the defendant is entitled to no relief.  (*Id*. at 9).

The defendant replies that "there was no showing that the alleged 600 or more images

were possessed by [him] at the time of the commission of the alleged offense 'on or about

August 1, 2005.'"  (Doc. 16 at 15).  Additionally, he states that there was no evidence to show

that the defendant had "accessed" the discs that were recovered.  (*Id*.)

The record establishes the following concerning the sentencing enhancement for

possession of 600 or more images of child pornography.  The presentence report states:

> On October 6, 2005, upon execution of a search warrant, contact was made with
> the defendant at his residence in Asheville, North Carolina.  On October 13, 2005,
> twenty-three compact discs were seized from the defendant's residence.  As a
> result, sixteen movie files of child pornography were found on two of the twenty-
> three compact discs seized.  Moreover, the compact discs contained more than
> 2,000 images of child pornography.

(Doc. 10-8 at 6).  The report also included a discussion of the sentencing enhancement based on

this information.  It provides:

> **Specific Offense Characteristics**: Because the offense involved 600 or more
> images (2,000 images and at least 16 movie files), the offense level has been
> increased by five levels pursuant to § 2G2.2(b)(7)(D).[11]

(*Id*. at 7).  The defendant's counsel (Mr. Steen) objected to the enhancement, stating that because

"the offense" did not involve the additional images, they should not be considered by the court.

(Doc. 10-9 (Attachment I) at 3-4).  In his memorandum in support of the objection, counsel

stated that although the defendant "cannot deny that his computer hard drive contained other

illegal images....[,] [he] was not involved in the distribution of those other images found on his

computer hard drive and his possession of those images is not part of the instant offense."  (Doc.

10-10 (Attachment J) at 15).

As has already been discussed, the defendant entered a knowing, intentional, and

voluntary plea.  He did not reserve this issue or any other issue raised herein for purposes of

appeal.  *See* FED. R. CRIM. P. 11(a)(2) (providing that, "[w]ith the consent of the court and the

government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in

writing the right to have an appellate court review an adverse determination of a specified pretrial

---

[11] Section 2G2.2(b)(7)(D) provides that if the offense involved 600 or more images, increase by 5 levels.
U.S.S.G. § 2G2.2(b)(7)(D).

motion"). Accordingly, this substantive claim is precluded from further review by this court at this time.

Even were this court in a position to review the substantive merits of his contentions, the court would find that the defendant is entitled to no relief. During the sentencing hearing, the court noted the defendant's objection to the enhancement concerning the number of images that were attributed to him under the Sentencing Guidelines. (Doc. 10-11 (Attachment K) at 9 of 30). Counsel argued that the "images were not ... where he could get to them." (*Id*. at 10 of 30). Counsel further stated that the files had been deleted and the defendant did not possess the equipment necessary to recover the images. (*Id*. at 10-13 of 30). The United States proffered that the evidence at a trial would show that 266 still images and ten of the video clips were possessed by the defendant on the date of the charged offense (August 1, 2005). (*Id*. at 10). Additionally, in the transcript of the conversation with the undercover officer discussing the prospect of trading images, the defendant stated that the photographs he sent were "saved on a CD" because he did not want his wife or anyone else to find them on his hard drive. (See Doc. 28 at 4 of 6). He further noted that the pictures were part of his "hidden files." (*Id*.)

Application note 4 to U.S.S.G. § 2G2.2 states that "[e]ach video, video-clip, movie, or similar visual depiction shall be considered to have 75 images." U.S.S.G. § 2G2.2, Application note 4. At the sentencing hearing, the court inquired whether the defendant would accept the proffer of the Government concerning the number of images. After counsel discussed the matter with the defendant, the following occurred:

> MR. STEEN: ....  And Your Honor, after talking with my client, he will accept the proffer from the government.

THE COURT: All right.  That those disks were seized and that there is child pornography on each disk.  And under the Guidelines he understands that that would count for 75 images for each file.

MR. STEEN: That is correct, Your Honor.

THE COURT: ....  All right....  I'm going to overrule the objection based on that because with that proffer I think there's – by a preponderance of the evidence at least, there's sufficient evidence in which to justify the – to overrule the objection and find that there is – an enhancement is in order for an increase of the offense level by 5 under 2G2.2(b)(7)(D).

(Doc. 10-11 (Attachment K) at 19 of 30).

This court finds that the proffer and the defendant's acceptance thereof is sufficient to support the objected-to enhancement.  This case is factually distinguishable from the *Dunlap* case cited by the defendant.  Additionally, the defendant has offered nothing to warrant a contrary conclusion at this juncture.  His conclusory allegations are simply insufficient to warrant further proceedings.

### C.    Ineffective Assistance Claims

#### 1.    The Standard of Review

The defendant's remaining claims all concern allegations of ineffective assistance of counsel.  (Doc. 1 at Grounds Four and Five).  The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence."  U.S. Constitution, Amend. VI.  "It has long been recognized that the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441 (1970).  The applicable standard of review in reviewing claims of ineffective assistance of counsel is well-settled:

To demonstrate that counsel's assistance was so defective as to require

reversal of a conviction, a defendant must show that (1) counsel's errors were so deficient as to render his assistance not reasonably effective, and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-96, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694, 104 S. Ct. 2052.

*Cummings v. United States*, 202 Fed. Appx. 374, 377 (11th Cir. 2006). The Eleventh Circuit

Court of Appeals has further stated:

> The petitioner bears the burden of proof on the "performance" prong as well as the "prejudice" prong of a *Strickland* claim, and both prongs must be proved to prevail. The *Strickland* test is not easily met; as we have said, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.' " *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir.1995) (en banc) (citation omitted).

> To establish ineffective performance, a "petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' " *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S. Ct. 2464, 2473, 91 L. Ed. 2d 144 (1986) (quoting *Strickland*, 466 U.S. at 668, 104 S.Ct. at 2065). This Circuit reviews a lawyer's conduct under the "performance" prong with considerable deference, giving lawyers the benefit of the doubt for "heat of the battle" tactical decisions. *See Mills v. Singletary*, 161 F.3d 1273, 1285-6 (11th Cir. 1998) (noting that *Strickland* performance review is a "deferential review of all of the circumstances from the perspective of counsel at the time of the alleged errors"); *see also Waters*, 46 F.3d at 1518 ("The test for ineffectiveness is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more. Instead the test is ... whether what they did was within the 'wide range of reasonable professional assistance.' " (citation omitted)); *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994) (stating that "[w]hen reviewing whether an attorney is ineffective, courts should always presume strongly that counsel's performance was reasonable and adequate" (internal quotation marks omitted)).

> This Court, sitting en banc, recently discussed this inquiry at length in *Chandler*:

>> The standard for counsel's performance is reasonableness under prevailing professional norms. The purpose of ineffectiveness review is not to grade counsel's performance.... To state the obvious: the trial lawyers, in every case, could have done

21

something more or something different.  So, omissions are inevitable.  But, the issue is not what is possible or what is prudent or appropriate, but only what is constitutionally compelled....  The petitioner must establish that particular and identified acts or omissions of counsel were outside the wide range of professionally competent assistance.

Courts must indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment. Thus, counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy.  Given the strong presumption in favor of competence, the petitioner's burden of persuasion-though the presumption is not insurmountable-is a heavy one....  [B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take....

In reviewing counsel's performance, a court must avoid using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time.  [I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

218 F.3d at 1313-1316 (citations and internal quotation marks omitted).

Likewise, the "prejudice" prong is difficult to meet.  To establish prejudice, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  A finding of prejudice requires proof of " 'unprofessional errors' so egregious 'that the trial was rendered unfair and the verdict rendered suspect.' " *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 374, 106 S. Ct. 2574, 2582, 91 L. Ed. 2d 305 (1986)).  As we recently explained, "habeas petitioners must affirmatively prove prejudice because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.'  '[T]hat the error had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." *Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000) (quoting

22

*Strickland* ).

*Johnson*, 256 F.3d at 1175-77.  "When the effectiveness of counsel at sentencing is questioned, the test is not whether the sentencing court might have issued a different sentence, but only whether the original sentence comported with the law."  *Cummings*, 202 Fed. Appx. at 377 (citing *Jones v. United States*, 224 F.3d 1251, 1259 (11th Cir. 2000)).

When the effectiveness of counsel on appeal is questioned, the test is whether counsel was ineffective in failing to discover non-frivolous issues and to file a merits brief raising them and whether he has demonstrated the requisite prejudice.  As to the second prong, he must show a reasonable probability that, but for his counsel's unreasonable failure to raise certain issues, he would have prevailed on his appeal.  *Smith v. Robbins*, 528 U.S. 259, 285-86, 120 S. Ct. 746, 764 (2000) (addressing a claim that appellate counsel was ineffective for filing an Anders brief) (emphasis added) (citations omitted); *Joiner v. United States*, 103 F.3d 961, 963 (11th Cir. 1997) (prejudice can be established by demonstrating that the "omitted claim would have had a reasonable probability of success on appeal").  Although a defendant may "bring a *Strickland* claim based on counsel's failure to raise a particular claim, ... it is difficult to demonstrate that counsel was incompetent."  *See, e.g., Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) (noting that only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome).

It is also well-settled that a court need not address both components of the ineffectiveness inquiry if the defendant makes an insufficient showing on one.

> In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  The object of an ineffectiveness claim is not to grade

counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the
ground of lack of sufficient prejudice, which we expect will often be so, that
course should be followed.

*Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

>    **2.    Trial Counsel**

>         **a.    Erroneous Advice Concerning the Sentencing Guidelines**

The defendant first asserts that his trial counsel erroneously advised him that his sentence

would be based only on the four images received by the undercover officer, when, in fact, it was

based on additional enhancements, including the evidence demonstrating that there were in

excess of 600 images in his possession, the material involving the prepubescent minors, and the

material portraying sado-masochistic conduct.  (Doc. 1 at 15 of 34).  These contentions were

discussed above in section II.B.3.  The reasoning of the court finding no due process violations is

equally applicable to the defendant's ineffective assistance of counsel contentions.  Accordingly,

the court finds that he is entitled to no relief on these contentions.

>         **b.    Failure to Conduct an Adequate Investigation**

Next he asserts that counsel failed to conduct an adequate investigation concerning the

offense conduct.  He further contends that had counsel done more, he would have discovered that

the defendant was not at his home at the time he purportedly engaged in the illegal conduct.

Additionally, he asserts that had counsel conducted an adequate investigation he would have

determined that the transcript of the undercover conversation between the defendant and the

undercover officer did not reflect the full conversation.  Finally, he asserts that had counsel

conducted a reasonable investigation, he would have determined that the defendant did not have

the necessary number of images to trigger the enhancement under U.S.S.G. § 2G2.2(b)(7)(D) for

possessing more than 600 images.  (Doc. 1 at 16-17 of 34).  The first and third contentions of the defendant have been discussed above in section II.B.  Premised on the previous reasoning of the court, it further finds that these contentions are insufficient to support his ineffective assistance of trial counsel claim.  To the extent that he asserts in conclusory terms that the transcript of the undercover conversation is inaccurate, there is nothing in the record to support this claim.  Additionally, there is nothing to show how he was specifically prejudiced thereby.  Accordingly, these allegations are insufficient to support his ineffective assistance claim.

### 3.   Appellate Counsel

The defendant next contends that his appellate counsel, Thomas Wolsoncroft, rendered ineffective assistance by failing to (a) meet or consult with him, and (b) challenge the trial court's application of specific enhancements at the time of sentencing.  (Doc. 1 at 19 of 34 (Ground Five)).  Each claim will be addressed separately.

### a.   Failure to meet or consult

The defendant asserts that his appellate counsel failed to consult with him and filed the appellate brief without his input.  The United States responds that he is entitled to no relief because his counsel acted reasonably and the defendant has demonstrated no prejudice.  (Doc. 10 at 13-14).

In *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S. Ct. 1029 (2000), the United States Supreme Court held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal" when there is reason to believe the defendant would want to appeal or the defendant has demonstrated an interest in appealing.  *Id*. at 480, 120 S. Ct. at 1036.  As noted by the Eleventh Circuit Court of Appeals in *Hammond v. Hall*, 586 F.3d 1289, 1335 n.19

(11th Cir. 2009), a failure to consult with the defendant deprives him of his federal constitutional right to be consulted about whether he should file a direct appeal. *Id.* However, *Flores-Ortega* is distinguishable in that the defendant herein had a direct appeal. His dissatisfaction concerns counsel's lack of communication with him regarding the merits of his claims. Accordingly, to be entitled to relief, he must show that counsel acted unreasonably and that he was prejudiced. *Smith v. Robbins*, 528 U.S. at 285-86, 120 S. Ct. at 764.

### b.        Sentencing Guidelines Issues

In support of this claim regarding an appeal of sentencing issues, the defendant asserts that appellate counsel failed to raise two matters. The first concerns the five-point enhancement under U.S.S.G. § 2G2.2(b)(2) for distributing child pornography for the purpose or expectation of receiving something of value in exchange. The second concerns the five-point enhancement under U.S.S.G. § 2G2.2(b)(7)(D) for possessing more than 600 images. However, as previously discussed herein, there is no merit to either of these claims. Thus, he cannot demonstrate that but for his counsel's allegedly unreasonable performance, he would have prevailed on appeal.[12]

## III.    OTHER MATTERS

### A.      Discovery

The defendant seeks discovery, including a copy of his computer hard drive that was seized, the CD ROMs that contained the additional images that were used for enhancement purposes, and copies of the photographs underlying the original charge. (Doc. 26). These

---

[12]The record does establish that appellate counsel did communicate and consult with both Davis and his sister regarding the appeal. (Doc. 10-16 (Ex. P at 1) and Doc. 16). Counsel received correspondence from both Davis and his sister prior to the filing of the appeal brief. Counsel reviewed the defendant's letters, the record, and communications from the trial counsel and then determined which legal issues were meritorious and constructed the defendant's appeal accordingly. Having taken these steps, counsel acted reasonably.

materials were available to the defendant and his counsel prior to the plea and sentencing.

Nothing before the court warrants further disclosure of the items in any way.  Additionally, and

more importantly, 18 U.S.C. § 3509(m) prohibits the disclosure requested by the defendant.

Accordingly, the motion is due to be denied.

## B.    Evidentiary Hearing

The defendant has also requested that the court conduct an evidentiary hearing into his

allegations.  (Doc. 3 at 4 (Amendment to 2255 Motion); Doc. 16).  Concerning an evidentiary

hearing, the Eleventh Circuit Court of Appeals has stated:

> ....  Evidentiary hearings must be held on motions to vacate "[u]nless the motion
> and the files and records of the case conclusively show that the prisoner is entitled to no
> relief."  28 U.S.C. § 2255....
>
> "[I]f the petitioner alleges facts that, if true, would entitle him to relief,
> then the district court should order an evidentiary hearing and rule on the merits of
> his claim."  *Aron*[ *v. United States*], 291 F.3d [708,] 714-715 [(11th Cir. 2002)]
> (citations and internal quotation omitted).  "Moreover, the court should construe a
> habeas petition by a *pro se* litigant more liberally than one filed by an attorney."
> *Id.* at 715.  A petitioner is not entitled to an evidentiary hearing if his claims "are
> merely conclusory allegations unsupported by specifics or contentions that in the
> face of the record are wholly incredible."  *Tejada v. Dugger*, 941 F.2d 1551, 1559
> (11th Cir. 1991) (addressing issue in context of 28 U.S.C. § 2254) (citations and
> internal quotations omitted).

*Franklin v. United States*, 227 Fed. Appx. 856, 859 (11th Cir. 2007).

Even affording the defendant the deference required under Eleventh Circuit precedent, the

court finds that the defendants's allegations do not entitle him to an evidentiary hearing.  The

record before the court conclusively shows that he is not entitled to any relief under the

circumstances.

### C.      Motion to Submit Additional Evidence

The defendant has also filed a motion to submit additional evidence in support of his

motion to vacate his conviction and sentence.  (Doc. 28).  Specifically, he seeks to supplement

the record to include a document from his doctor concerning his August 1, 2005 visit and a copy

of the "chat" conversation with the undercover agent at 13:00:59 on August 1, 2005.  Upon

consideration, the court finds the motion is due to be granted.[13]  The relevant evidence has all

been considered by the court in determining the present motion to vacate.

### D.      Motion for Appointment of Counsel

Premised on the court's review of the defendant's pleadings and the merits of his claims,

the court finds that his motion for appointment of counsel (doc. 29) is due to be denied.  Rule

8(c) of the Rules Governing § 2255 Proceedings provides that "[i]f an evidentiary hearing is

required, the judge shall appoint counsel for a movant who qualifies for the appointment of

counsel under 18 U.S.C. § 3006A(g)[.]"  Section 3006A allows for the appointment of counsel

when the interests of justice so require and a defendant is financially unable to obtain

representation.  The defendant herein has fully and effectively presented the relevant contentions

in his motion and pleadings.  The court finds that due to the fact that an evidentiary hearing is not

required under the circumstances, he is not entitled to the appointment of counsel at this juncture.

## IV.    CONCLUSION

Premised on the foregoing, the court finds that the defendant's motion to vacate his

conviction and sentence (doc. 1) and the amendment thereto (doc. 3) are due to be denied.

Any party may file specific written objections to this report and recommendation within

---

[13]The granting of the motion is more a matter of convenience as the evidence is already in the record.

fourteen (14) days of the date it is filed in the office of the Clerk.  Any objections filed must specifically identify the findings in the magistrate judge's recommendation to which the objections pertain.  Frivolous, conclusive, or general objections will not be considered by the District Court.  Failure to file written objections to the proposed findings and recommendations of the magistrate judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  A copy of the objections must be served upon opposing parties.

The Clerk is **DIRECTED** to serve a copy of this Report and Recommendation on the defendant and counsel for the United States.

**DONE**, this the 3rd day of March, 2011.

JOHN E. OTT
United States Magistrate Judge